**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Duffy,<br><br>            Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>            Defendant. | No. CV-19-08161-PCT-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff John Duffy's ("Claimant") appeal from the denial of his application for social security disability benefits. (Doc. 11). The Commissioner has responded, (Doc. 17), and Claimant has replied, (Doc. 18). The Court now rules on the appeal.

**I.    BACKGROUND**

   **A. Disability Determination**

To qualify for benefits, an applicant must first show he is "under a disability." 42 U.S.C. § 423(a)(1)(E). If he shows he suffers from a medically determinable physical or mental impairment that prevents him from engaging in any "substantial gainful activity," the applicant is disabled. *Id.* § 423(d)(1)–(2).

By rule, an Administrative Law Judge ("ALJ") for the Social Security Administration ("SSA") follows a five-step process to determine whether the applicant meets the statutory definition of disability. 20 C.F.R. § 404.1520(a)(1). This process may end at any step at which the ALJ can find the applicant disabled or not. *Id.* § 404.1520(a)(4).

At step one, the ALJ determines whether the applicant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the applicant is not disabled. *Id.* If he is not, the ALJ proceeds to step two and considers whether any of the applicant's physical or mental impairments or combination of impairments are "severe." *Id.* § 404.1520(a)(4)(ii). If that threshold is met, the ALJ proceeds to step three to determine whether the applicant's impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the applicant is disabled. *Id.* If not, before proceeding to step four, the ALJ must assess the applicant's "residual functional capacity" ("RFC"). *Id.* § 404.1520(a)(4). The RFC represents the most an applicant "can still do despite [his] limitations." *Id.* § 404.1545(a)(1). At step four, the ALJ uses the RFC to determine whether the applicant can still perform his "past relevant work." *Id.* § 404.1520(a)(4)(iv). If so, the applicant is not disabled. If not, the ALJ proceeds to the final step to determine whether—considering the applicant's RFC, age, education, and work experience—he "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the applicant cannot, he is disabled. *Id.*

### B. The ALJ's Decision

Here, the ALJ first found Claimant was not engaged in substantial gainful activity. (Doc. 10-3 at 17). Next, the ALJ found Claimant had the following severe impairments: coronary artery disease, status post two myocardial infarctions with stent placement, status post bilateral total knee replacements, status post bilateral shoulder surgeries, and osteoarthritis. (*Id.*). The ALJ then determined that none of these impairments met or medically equaled anything in Appendix 1 to Subpart P of 20 C.F.R. Part 404. (*Id.* at 19). Before proceeding to step four, the ALJ found Claimant had the requisite RFC to perform light work as defined by SSA regulations. (*Id.* at 20). As relevant here, the ALJ assigned great weight to the opinions of the state agency's medical consultants in making that finding. (*Id.* at 27). At step four, the ALJ concluded Claimant was not disabled because he could perform his past relevant work as it is usually performed in the national economy. (*Id.* at 29). This appeal followed.

## II. DISCUSSION

### A. Standard of Review

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means . . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

### B. State Agency's Medical Opinion

Claimant argues substantial evidence does not support the RFC because, while the ALJ assigned great weight to the state agency's medical consultants' opinions, she did not include a limitation that the initial consultant found—that Claimant was limited to frequent handling in the right upper extremity—in the RFC without explaining why. (Doc. 11 at 9). The Commissioner counters that the ALJ discussed evidence from which a reasonable person could conclude the right upper extremity was not so limited. (Doc. 17 at 13–16).

When reviewing the ALJ's RFC finding, it is important to bear in mind that it is not strictly the province of doctors; rather, it is the ALJ's domain. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Even Claimant recognizes that a wide variety of evidence must therefore be considered in this analysis. (Doc. 11 at 10). Here, the ALJ discussed both medical and nonmedical evidence from which one could reasonably conclude that Claimant's right upper extremity was not as limited as he now claims.

For instance, the ALJ mentioned that Claimant had engaged in "a somewhat normal level of daily activity," including chopping wood, shooting, and camping. (Doc. 10-3 at 21). The ALJ also noted that "within three months after [his] right elbow and wrist surgeries . . . [Claimant] had good function and use of the right arm and hand." (*Id.* at 22). She explicitly stated that "[m]edical records do not confirm [Claimant's] allegation of inability to use his right hand and arm." (*Id.* (citing Exs. B4F; B5F; B13F)). The ALJ also described that Claimant reported "doing well overall" following the surgery, including experiencing less pain and a decrease in numbness following a carpal tunnel injection. (*Id.* at 23 (citing Exs. B4F; B5F)). Several months later, his "bilateral upper extremities appeared normal," his "right elbow showed no obvious swelling or deformity," and "[h]e did not have pain on his endpoints as he did previously. . . . [with] normal grip strength and motor tone." (*Id.* at 24; (citing Ex. B5F)). The ALJ concluded by stating, "[w]hile there is no doubt [that] [C]laimant had limitations due to his medically determinable impairments and underwent several surgeries, the overall medical records document that he recovered well with no ongoing limitations precluding him from performing all work-related activity." (*Id.* at 29).

Contrary to Claimant's assertion, this discussion satisfied any duty in the ALJ to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence, stat[e] h[er] interpretation thereof, and mak[e] findings," *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998), in reasoning why the RFC would not include a limitation to the right upper extremity. The evidence that the ALJ cited explains fully why the RFC did not include the limitation that the initial state agency consultant found and any failure to say "magic words" by not citing that consultant's specific finding does not amount to reversible error. Thus, substantial evidence exists to support an RFC that did not include a limitation to frequent handling in the right upper extremity.

**C. Res Judicata**

Citing *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988), Claimant also argues the ALJ erred by finding he had different past relevant work than did a prior ALJ. (Doc. 11 at 5). Specifically, he points out that the previous ALJ found that he worked as a sheriff's

deputy, a job that requires medium work, and, if that finding continued to apply in this case, his RFC would have precluded a return to such work because it limited him to light exertion. (*Id.* at 6). The Commissioner argues in response that res judicata principles did not preclude the ALJ in this proceeding from finding a different past relevant work because she had new evidence in the form of the vocational expert's ("VE") testimony that indicated Claimant's description of his work was more in line with the Dictionary of Occupational Titles' ("DOT") description of a jailer. (Doc. 17 at 16–20).

Res judicata principles apply to administrative proceedings, albeit "less rigidly" than they do in judicial proceedings. *Chavez*, 844 F.2d at 693. Even if an applicant demonstrates that changed circumstances justify diverging from a prior decision's outcome, the prior decision's underlying findings are still due "some res judicata consideration." *Id.* at 694. What the ALJ cannot do is "reconsider[] prior findings based strictly on information already presented to the first judge." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008).

In the prior proceeding, the VE testified that Claimant's past relevant work included work as a sheriff's deputy, which required medium exertion. (Doc. 10-3 at 123). It is clear, however, that the VE in that proceeding placed an emphasis on finding DOT entries for all the job titles that Claimant had mentioned and did not necessarily focus on finding an entry that correlated with Claimant's description of his work. (*See id.* at 123–24). The VE finally opined that a hypothetical person who could perform only light work—as was true for Claimant—would be precluded from working as a sheriff's deputy. (Docs. 10-3 at 125; 10-4 at 81).

In the present proceeding, the VE first testified that Claimant's past relevant work included work as a sheriff's deputy and that he actually performed the work at a heavy, or even very heavy, exertional level. (Doc. 10-3 at 82). The ALJ then noted that the state agency had classified Claimant's "work at jail as a jailer" and asked the VE to explain "what the difference [wa]s." (*Id.*). The VE then read the DOT's description of jailer and concluded that, when compared with Claimant's testimony, jailer was a "more accurate"

job description because Claimant "talked about having to . . . restrain prisoners and having lifting requirements so it would be well above light . . . probably again heavy." (*Id.* at 83). The VE lastly opined that a hypothetical person who could perform only light work like Claimant could work as a jailer because, even though he would not be able to do the job as he had actually performed it, only a light level of exertion is required for that job as performed in the national economy. (*Id.*).

Given the foregoing, it is clear that the ALJ not only had the benefit of new evidence from the state agency but also different testimony from the VE, which focused more on locating a DOT title that comported with Claimant's own description of his work rather than the name of the job that Claimant supplied. Thus, the ALJ had new evidence before her when classifying Claimant's past relevant work and did not improperly reconsider the findings of the previous ALJ by simply drawing a different conclusion from the same evidence. *Stubbs-Danielson*, 539 F.3d at 1173.[1] The foregoing likewise makes clear that Claimant's assertion that the VE gave a contradictory explanation is wrong. (Doc. 11 at 8). The VE never asserted that Claimant's work was "in fact light"; instead, the VE explained that, while Claimant had actually performed heavy work as a jailer, most jailers in the national economy were required to perform only light work. And although Claimant could no longer perform heavy work, he could still perform light work. There is nothing inconsistent in this testimony and Claimant's arguments to the contrary ignore that the ALJ may permissibly find an applicant able to perform his past relevant work as generally performed in the national economy despite not being able to perform such work as he or she actually had before. *See Carter v. Astrue*, No. C 08-5095 VRW, 2009 WL 2084446, at *4 (N.D. Cal. July 14, 2009) (rejecting assignment of res judicata error where the VE

---

[1] Citing no authority, Claimant argues that the ALJ must make a finding that evidence is "new." (Doc. 18 at 2). The Court rejects this novel idea. *E.g.*, *Scott v. Colvin*, No. 13-CV-1189 W(DHB), 2014 WL 3797491, at *14 (S.D. Cal. Aug. 1, 2014) (looking to the whole record to determine if the evidence was new).The Court likewise rejects Claimant's argument that the ALJ was somehow bound to the prior determination because it was never appealed meaning the second ALJ had no transcript of the first proceeding. (Doc. 18 at 2). Taken to its endpoint, such logic would mean that findings in unappealed cases are always binding on the ALJ, a proposition fundamentally at odds with the "less rigid" application of res judicata that *Chavez* and other like cases require.

testified to the applicant's "ability to perform her past relevant work under a different but allowable definition"); *see also Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) ("The regulations advise an ALJ to first consider past work as actually performed, and then as usually performed.").[2]

Accordingly, the Court finds that the ALJ did not err in "reclassifying" Claimant's past relevant work.

## III.   CONCLUSION

Based on the foregoing,

IT IS ORDERED that the decision of the Commissioner is AFFIRMED. The Clerk of the Court shall enter judgment accordingly.[3]

Dated this 21st day of April, 2020.

James A. Teilborg
Senior United States District Judge

---

[2] Although Claimant provides that the ALJ violated SSR 00-4p because the VE's testimony was contradictory, this ruling applies to conflicts between the VE testimony and the DOT. SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000). The ALJ complied with this duty by asking whether the VE's testimony was consistent with the DOT. (Doc. 10-3 at 91).

[3] To the extent mandate is required, the judgment shall serve as the mandate.

- 7 -